**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **INDICTMENT** |
| | : | |
| **v.** | : | **CRIMINAL NO. 1:24-CR-** 9 |
| | : | |
| | : | **VIOLATIONS: 18 U.S.C. § 1349** |
| **JORDAN C. ALPHONSUS,** | : | **18 U.S.C. § 1343** |
| **JOEY AMOUR JACKSON, aka Apeshit,** | : | **18 U.S.C. § 1956(a)(1)(A)(i)** |
| **YLIJIRA ANOINISE JACKSON,** | : | **18 U.S.C. § 1956(a)(1)(B)(i)** |
| **SARDARIA COPELIN, and** | : | **18 U.S.C. § 1956(h)** |
| **LANCE DAVID RIDDLE, aka C-Port** | : | **18 U.S.C. § 981(a)(1)(C)** |
| | : | **18 U.S.C. § 982** |
| | : | **28 U.S.C. § 2461(c)** |

**THE GRAND JURY CHARGES:**

## GENERAL INTRODUCTION

At all times material to this Indictment:

1. The Georgia Department of Corrections ("GA DOC") is the agency responsible for overseeing the operations of the Georgia State Prison System and its approximately 50,000 inmates.

2. Under the Official Code of Georgia § 42-5-18, it is unlawful to give an incarcerated GA DOC inmate a cellular telephone while incarcerated. Accordingly, within the GA DOC prison system, cellular telephones are considered to be contraband.

3. Despite its illegality, GA DOC inmates frequently obtain cellular telephones while incarcerated.

4. Each year thousands of contraband cellphones are confiscated within the GA DOC. Many of these are "smartphones" with full internet capabilities.

5. These phones are smuggled into GA DOC prisons in a variety of ways including, but not limited to, corrupt employees, wholesale deliveries, drone drops, and family visitation.

6. The possession of cellular telephones by GA DOC inmates creates a significant risk to prison security and to public safety. GA DOC inmates use contraband cellular telephones to commit various criminal actions while incarcerated. These crimes include frauds, drug trafficking, and violent crimes such as murder.

7. Calhoun State Prison ("CSP") is a GA DOC medium security prison located in Morgan, Calhoun County, Georgia. CSP houses approximately 1,700 adult male felons.

8. Defendants, **JOEY AMOUR JACKSON**, **aka Apeshit**, and **LANCE DAVID RIDDLE**, are inmates in the custody of GA DOC, each of whom has during certain periods of time in GA DOC custody been detained inside CSP.

9. **JOEY AMOUR JACKSON**, **aka Apeshit**, and **LANCE DAVID RIDDLE** each had access to contraband cellular phones during their time in GA DOC custody.

10. During the time between August 2021 and June 2022, multiple attempted deliveries of contraband via drones as set forth in the chart below were intercepted in the area around CSP.

| Date | Items Recovered |
|---|---|
| August 22, 2021 | 1,336 grams of marijuana, 6 cellphones, and 1,337 grams of tobacco |
| December 13, 2021 | 146 grams of marijuana, 2 cellphones, and 1,954 grams of tobacco |
| December 14, 2021 | 175 grams of MDMA, 1,323 grams of marijuana, 2,121 grams of tobacco, 13 cellphones, and 1 drone |
| January 10, 2022 | 2.3 pounds of marijuana, 328 grams of tobacco, 2 cellphones, and 1 drone |

| | |
|---|---|
| February 20, 2022 | 1.26 pounds of methamphetamine, 3.1 pounds of marijuana, 1.4 pounds of tobacco, and 1 drone |
| May 29, 2022 | 27 grams of MDMA, 73 grams of marijuana, 2,828 grams of tobacco, 12 cellphones, and 1 drone |
| June 11, 2022 | 171 grams of methamphetamine, 216.7 grams of MDMA, 130 ounces of marijuana, 13,202 grams of tobacco, 20 cellphones, and 1 drone |
| June 20, 2022 | 2 pounds marijuana, 10 pounds tobacco, 8 cellphones, and 1 drone |

11. During the relevant time frame, correctional officers at CSP would routinely confiscate scripts used by the scammers as they were speaking with the victims of these crimes.

**COUNT ONE**
**(Conspiracy to Commit Wire Fraud)**

**A. Introduction**

1. The allegations contained in paragraphs 1 through 11 of the General Introduction of this Indictment are incorporated by reference as if set forth fully herein.

**B. The Conspiracy and Its Objects**

Beginning sometime before about June 2020, and continuing until on or about November 1, 2022, in the Albany, Columbus and Valdosta Divisions of the Middle District of Georgia, and elsewhere within the jurisdiction of the Court,

**JORDAN C. ALPHONSUS,**
**JOEY AMOUR JACKSON, aka Apeshit,**
**YLIJIRA ANOINISE JACKSON,**
**SARDARIA COPELIN,**
**and,**
**LANCE DAVID RIDDLE, aka C-port,**

Defendants herein, did knowingly combine, conspire, confederate, and agree with one another and with others, both known and unknown to the Grand Jury, to:

a) knowingly and willfully devise, execute, and attempt to execute a scheme and artifice to defraud and to obtain money and property from T.C., whose identity is known to the Grand Jury by means of materially false and fraudulent pretenses, representations and promises and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communication interstate and foreign commerce, writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

The objects of the conspiracy were:

1. To impersonate law enforcement and public officials in telephone calls to extort citizens for payments under the fictitious threat of arrest, detention, and prosecution. Thereby, the defendants unjustly enriched themselves by means of materially false and fraudulent pretenses, representations and promises.

**C. <u>Manner and Means of the Conspiracy</u>**

The manner and means whereby the conspiracy sought to be accomplished were as follows:

1. The conspirators would and did use contraband cellular telephones with Internet access to conduct research on law enforcement agencies located across the United States, including but not limited to:

a) Denver Police Department (Colorado);

b) Larimer County Sheriff's Office (Colorado);

c) Pasco County Sheriff's Office (Florida);

d) Hanover County Sheriff's Officer (Virginia);

e) Las Vegas Metro Police Department (Nevada);

f) Santa Ana Police Department (California);

g) El Segundo Police Department (California);

h) Pensacola Police Department (Florida);

i) Rocky River Police Department (Ohio); and

j) Stark County Sheriff's Office (Ohio).

2. Based on the research the inmates learned the names and addresses of local police supervisors, federal agents and supervisors, local, state, and federal judges.

3. The inmates used publicly-available databases to obtain information such as addresses and telephone numbers for these individuals.

4. Using their contraband cellular telephones, the inmates called the potential victims whose names and numbers had also been obtained via the Internet. The inmates targeted persons with a prominent online presence such as doctors, realtors, and therapists. Most of the victims who were targeted were female.

5. During these telephone calls, the inmates made certain false representations to the victims, including, but not limited to:

   a) stating that the inmates were law enforcement or public officials;

   b) stating that potential victims had a warrant for something like failing to appear for jury duty, pursuant to a witness subpoena or to pay a traffic fine;

c) that because of the aforementioned alleged failure that warrants had been issued for the victim's arrest; and

d) that the victims could have the warrant lifted or dismissed by paying a certain stated fee to the inmate posing as law enforcement/public official.

6. In furtherance of the defendant(s) scheme to portray themselves as law enforcement or public officials, the inmates used Voice-Over-Internet-Protocol technology via their contraband cellular telephones in such a way that the victims' phones displayed information which led those receiving the calls to believe that the calls originated from a legitimate law enforcement entity.

7. Victims who agreed to make the payments would be given instructions on how to transfer the funds. Methods of payment included the purchase of Green Dot MoneyPak cards and Visa gift cards, wire transfers, and Cash App.

8. The victims were falsely told that they were under a gag order and were told they must remain on the phone with the inmate until the payment was received in order to avoid immediate arrest and detention.

9. The inmates conspired with individuals who were outside the custody of GA DOC in order to launder the proceeds of the fraud.

10. The inmates used the proceeds for a variety of otherwise lawful purposes such as purchasing homes and vehicles. The inmates also used the proceeds for illegal purposes such as purchasing controlled substances for their own use or distribution inside the prisons.

11. The inmates solicited photos of driver's licenses, social security cards and other forms of identification from the victims and would store the same on their phones.

12. After the victim provided the CSP inmate with funds via the aforementioned methods, the inmate then used the contraband cellphone to cause the monies to be transferred to others outside GA DOC custody. In some instances, the monies were then used to pay a variety of expenses.

13. Those defendants and co-conspirators who acted as the scammers conducting the calls with the victims were often compensated by other inmates in the form of controlled substances.

**D. Overt Acts in Furtherance of the Conspiracy**

1. On January 19, 2021, G.R. received a phone call from 714-569-3700 and was informed that multiple warrants had been issued for her arrest for failing to appear in court. G.R. was subsequently instructed to purchase Green Dot Bank Cards, read the numbers to the caller, and send a strip search/nude video of herself to telephone number 714-340-2088. She complied. She was also instructed to email copies of her ID and social security card to ncicverify.gov@usa.com, with attention addressed to Donna Blackwell. G.R. also complied with these instructions. In total, G.R sent approximately $9,000. **DAVID LANCE RIDDLE, aka C-port**, controlled the email account ncicverify.gov@usa.com.

2. Between August 2020 and May 2021, **DAVID LANCE RIDDLE**, **aka C-port**, controlled a Cash App Cash Tag $whitecport which had over 750 transactions or attempted transactions during the aforementioned timeframe. The total for these transactions was approximately $119,250. **DAVID LANCE RIDDLE, aka C-port**, had multiple electronic transactions with other conspirators and with other inmates who are listed in this Indictment.

3. **DAVID LANCE RIDDLE**, **aka C-port**, routinely sent the proceeds of this fraud out to persons not in custody of GA DOC for them to wash the money for him.

4. **DAVID LANCE RIDDLE**, **aka C-port**, recruited others to join the scheme and to provide names of potential victims who might be targeted.

5. **DAVID LANCE RIDDLE**, **aka C-port**, instructed other conspirators in the finer points of the scheme helping them craft the stories they would tell to the victims and sharing lists of law enforcement agencies they should use as part of their impersonation.

6. **DAVID LANCE RIDDLE**, **aka C-port**, with the assistance of another inmate created a shell corporation, DLR Rental Service, to assist him in laundering the proceeds of this activity.

7. On or about April 15, 2021, T.C. received a phone message from an individual who stated his name was Joseph Allen and identified that he worked for the Pasco County, Florida, Sheriff's Office.

8. Later, on the same date, T.C. received a phone call from an individual who identified himself as Bill Lindsey and also identified that he worked for the Pasco County, Florida, Sheriff's Office.

9. When T.C. spoke to the person who identified himself as Bill Lindsey, T.C. was told that she had missed jury duty on April 12, 2021, that as a result she had been held in contempt of court, and that she would have to pay fine.

10. The person who identified himself as Bill Lindsey told T.C. that if she failed to pay that a warrant would be issued, that she would be arrested, and then required to pay. T.C. also spoke with persons identifying themselves as Joseph Allen and Sheriff Nelson.

11. T.C. was instructed to go to PNC Bank at 8522 U.S. Highway 19, Port Richey, Florida, and deposit cash into an account. T.C. was provided a PIN code for the deposit by one of the callers.

12. T.C. made four separate cash deposits into a checking account. These deposits totaled approximately $8,900.

13. The callers also instructed T.C. to make additional payments via Green Dot MoneyPak cards. The payments sought totaled approximately $3,500. T.C. purchased a total of six cards. T.C. was able to transfer approximately $1,500 via Green Dot MoneyPak cards.

14. The approximate amount of $8,900 deposited by T.C. via PIN Code at PNC Bank were deposited into the checking account of **JORDAN C. ALPHONSUS**.

15. **JORDAN C. ALPHONSUS** thereafter transferred $5,300 of the money deposited by T.C. into his PNC Bank savings account.

16. In addition to receiving and transferring the funds obtained via victim, T.C., **JORDAN C. ALPHONSUS** has conducted numerous other transactions with inmates at CSP, their family and friends. In particular, **JORDAN C. ALPHONSUS** was working together with **YLIJRA ANTOINISE JACKSON** and her brother, a CSP inmate, **JOEY AMOUR JACKSON**, **aka Apeshit**, as well as CSP inmate **DAVID LANCE RIDDLE**, **aka C-port**.

17. On or about April 15, 2021, **JORDAN C. ALPHONSUS** sent approximately $950 in two payments to the user of 770-912-7964, registered at that time to K.T.

18. On or about April 15, 2021, **JORDAN C. ALPHONSUS** sent approximately $1,800 to **SARDARIA COPELIN** using email skylarjeffries0114@gmail.com.

19. On or about April 15, 2021, **JORDAN C. ALPHONSUS** sent approximately $1,800 to **YLIJRA ANTOINISE JACKSON** via Apple Pay.

20. **SARDARIA COPELIN** initiated service on a phone later seized by GA DOC from **JOEY AMOUR JACKSON**, **aka Apeshit.**

21. **YLIJRA ANTOINISE JACKSON** made multiple electronic payments to **JOEY AMOUR JACKSON, aka Apeshit** and to others on his behalf.

22. **SARDARIA COPELIN** made electronic payments to others on **JOEY AMOUR JACKSON, aka Apeshit's** behalf.

23. **JOEY AMOUR JACKSON, aka Apeshit**, also made electronic payments to many others including but not limited to: A.L., R.T, R.C., J.M, A.D., V.W., **YLIJRA ANTOINISE JACKSON,** M.F., and P.J.

All in violation of Title 18, United States Code, Section 1349 i/c/w/ Title 18, United States Code, Section 1343.

**COUNT TWO**
**(Conspiracy to Commit Money Laundering)**

1. The allegations contained in paragraphs 1 through 11 of the General Introduction of this Indictment are incorporated by reference as if set forth fully herein.

Beginning sometime before about June 2020, and continuing until on or about November 1, 2022, in the Albany, Columbus and Valdosta Divisions of the Middle District of Georgia, and elsewhere within the jurisdiction of the Court,

**JORDAN C. ALPHONSUS,**
**JOEY AMOUR JACKSON, aka Apeshit,**
**YLIJIRA ANOINISE JACKSON,**
**SARDARIA COPELIN,**
**and,**
**LANCE DAVID RIDDLE, aka C-port,**

knowingly conspired, agreed, and had a tacit understanding with each other and with others both known and unknown to the Grand Jury to violate Title 18, United States Code, Section 1956, that is:

a) To knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, that is—an electronic money transfer, which involved the proceeds of a specified unlawful activity, that is—the wire fraud conspiracy alleged in Count One, knowing that the transaction was designed, in whole and in part, to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and what while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity and

b) To knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, that is an electronic money transfer, which involved the proceeds of a specified unlawful activity, that is the wire fraud conspiracy alleged in Count One, with the intent to promote the carrying on of a specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i) and 1956(h).

**FORFEITURE NOTICE**
**(18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1), and 28 U.S.C. § 2461(c) – Criminal Forfeiture)**

1. The allegations contained in Counts One and Two of this Indictment are hereby re-alleged and incorporated by reference into this Notice for the purpose of alleging forfeiture to the United States of America, pursuant to the provisions of Title 18, United States Code, Section

981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c); and/or Title 18, United States Code, Section 982(a)(1).

2. Upon conviction of the offense(s) in violation of Title 18, United States Code, Section 1349, in connection with Title 18, United States Code, Section 1343 set forth in Count One; and/or Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i) and 1956(h) set forth in Count Two of this Indictment, the defendant(s),

**JORDAN C. ALPHONSUS,**
**JOEY AMOUR JACKSON, aka Apeshit,**
**YLIJIRA ANOINISE JACKSON,**
**SARDARIA COPELIN,**
**and**
**LANCE DAVID RIDDLE, aka C-port,**

shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, or a conspiracy to commit such offense; and/or any property, real or personal, involved in such offense, or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1), including, but not limited to the following, to wit: eight thousand, nine hundred dollars ($8,900.00), and/or a money judgment in an amount to be determined.

3. If any of the property subject to forfeiture, as a result of any act or omission of the defendant(s):

(a) cannot be located upon exercise of due diligence;

(b) has been transferred, sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), through Title 18, United States Code, Section 981(a)(1)(C), and Title 18, United States Code, Section 982(b)(1).

All pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982, and 28 U.S.C. § 2461(c).

A TRUE BILL.

*s/ Foreperson of the Grand Jury*
FOREPERSON OF THE GRAND JURY

PRESENTED BY:

PETER D. LEARY
UNITED STATES ATTORNEY

[signature]
LEAH E. MCEWEN
ASSISTANT UNITED STATES ATTORNEY

***Filed in open court this*** 13 ***day of February, 20***24.

[signature]
***Deputy Clerk***